LAND, J.
Relator alleges that on June 28, 1903, he obtained a divorce from his wife, Mary Owens, on the ground of infidelity, as shown by- copy of judgment annexed to the petition; that at the time of the institution *103 of said suit for a divorce the said Mary Owens was living in adultery with Andrew Thompson, to whom she is now married; that said defendants have in their custody, Carrie Curtis, the issue of the marriage of relator and said Mary Owens; that the said child is not properly cared for, nor properly fed or clothed, and her morals utterly neglected; the surroundings being such that the child will be reared in ignorance and immorality; and that relator is abundantly able to educate, support, and properly care for his said child, and is anxious to do so.
The relator prays for judgment awarding him the custody and care of said child. The petition was verified by relator’s affidavit. The copy of judgment annexed to the petition shows that on May 12, 1903, an absolute judgment for divorce was rendered in favor of relator, and against Mary Owens.
This judgment is however silent as to custody of the child.
Answering, the respondents, pleaded the general issue, and then admitting the possession of the child, averred that in suit No. 67, 850 on the docket of the civil district court, the relator alleged in his petition for a divorce that the child, Carrie Curtis, was an adulterous bastard bom after his separation from Mary Owens, which allegation formed the basis of his charge of adultery in said suit.
Respondents further averred that in his subsequent suit for a divorce, plaintiff alleged that there were no children born of his marriage with Mary Owens, and did not ask for the custody of any children. Respondents finally denied that the minor was improperly cared for.
The relator did not offer in evidence the alleged judgment of divorce or any proceedings in the suit in which it was rendered.
The relator testified that at the time the divorce suit referred to in the petition was instituted there was one child, Carrie Curtis, issue of his marriage with Mary Owens.
Relator further testified that this child was bom about six months after he had separated from Mary Owens, who gave birth to another, child about three or four months after he obtained a judgment of divorce.
The record in the first suit of Charles Curtis v. Mary Owens was filed in evidence by the respondents. All of this record, except the petition has been omitted from the transcript by consent of counsel.
We are informed by the district judge that this first suit was instituted in May, 1902, and that the judgment of nonsuit was rendered on January 7, 1903.
In this petition the plaintiff alleged that he was married to Mary Owens in September 1891; that of said marriage there had been no legal issue; that Mary Owens left the matrimonial domicile in March 1900, and has since remained away-; that after she left the matrimonial domicile, his said wife gave birth to a girl child, still living, “whom she, his said wife, unblushingly declares is -not his offspring”; - and that “petitioner therefore charges his said wife, with the crime \of -adultery.” Wherefore,the plaintiff prays for judgment of absolute divorce: ;
Tlje evidence does not stiow'wliat'proceedings, were had in the se.cond suit or the nature of the judgment ’rendeiied..,, If seeing, however, to be conceded that'plaintiff'bbtfiined a judgment of divorce. ■
Both- parties -have remarried* It is shown thatithe child was born'.-prior to the institution of the first suit..' < - - -
We agree with the district judge that the present proceeding was taken under Act No. 79, p. 91, of 1894, and not under the alleged judgment of divorce rendered in May, 1903.
The petition does not claim that relator is entitled to the custody of the child by the force and effect of said judgment, which he did not even offer in evidence. The grounds *105 of relief alleged are those set forth in Act. No. 79, p. 91, of 1894, empowering district judges to remove children from the custody of parents, tutors, or other persons having care of them, whenever the physical or mental welfare of the child is seriously endangered by the neglect or abuse of the vicious or immoral habits of the custodian.
The district judge found that the respondents had been lawfully married; were above the average of colored people, and that the mother of the child was decent and reputable and concludes his opinion as follows:
“It is the best judgment of the court that this little girl, who is about five years of age, should remain with her mother, who has been the custodian of the child from the date of its birth, without any claim being made by relator, her former husband; on the contrary, the relator has repudiated the paternity of the child.”
The court a qua, in deciding the issues properly declined to consider the record and judgment in the second suit which had not been filed in evidence, and which were not really the basis of the present proceeding.
The allegation of paternity in the present proceeding is repelled by the previous judicial allegation of the relator that there was no issue of the marriage, and that the child was an adulterous bastard.
The judgment of nonsuit in the first divorce suit decided nothing.
The allegations of the petition in that suit were not adjudged to be unfounded, and plaintiff was left free to urge them in a subsequent action.
There is no good reason why relator should not be bound by such allegations, which so far as the record shows have never been adjudged to be untrue.
No court would award the custody of a child to a litigant making such allegations.
We do not know what the relator alleged or prayed for in the second suit for divorce.
From his own allegations it appears that the judgment did not award to him the custody of the child. What his rights may be under such alleged judgment cannot be considered in the absence of the record.
We consider the judgment rendered herein as merely provisional, and it is affirmed.